**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ROBERT HAMM, JR.,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　**Case No. 6:06-cv-1348-Orl-28KRS**

**JOHNSON BROS., INC.,**

        **Defendant.**
_____/

# ORDER

Plaintiff Robert Hamm, Jr. brings the instant action against Defendant Johnson Bros., Inc. ("Johnson") alleging interference with medical leave and retaliation under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), and violation of Section 448.102, Florida Statutes – part of Florida's Whistle-Blower Act. Plaintiff contends that Johnson demoted him in violation of these statutes.

This case is before the Court on Johnson's Motion for Final Summary Judgment (Doc. 95) and Plaintiff's Memorandum in Opposition (Doc. 114). Having considered the record in this case and pertinent law, the Court concludes that Johnson's motion must be granted in part and denied in part.

## I. Background

Plaintiff has been employed by Johnson twice, the second term of employment beginning in 1999. During the summer of 2006, Plaintiff was supervising a construction crew on a bridge and roadway project in Cocoa Beach, Florida. Plaintiff's title was "grade

superintendent," and as such he ran and managed the "dirt operations" on the job.  (Hamm Dep. at 10).  Plaintiff reported to Zvonko Juric, a project manager; Brian Seecharin, a project engineer; and Dick Commerford, an area manager over dirt operations.  (Id. at 11).  Plaintiff describes all three of these men as his "direct boss."  (Id.)

In June 2006, Plaintiff requested and was granted leave under the FMLA to care for his ailing mother in Rhode Island.  Plaintiff began this leave on June 22, 2006.  On June 30, while he was in Rhode Island, Plaintiff spoke to Mr. Commerford on the telephone.  (Id. at 64).  During that conversation, Mr. Commerford sounded upset with Plaintiff, and the two of them discussed a problem regarding the Cocoa Beach project – for a distance of 350 feet, the road needed to be raised one foot.  (Id. at 61).  Mr. Commerford told Plaintiff during that conversation that when he returned to Johnson it would be as an "equipment operator."  (Id. at 111-13).  Plaintiff returned to work on July 17, 2006 in the equipment operator position, and his pay was reduced.

The problem with the elevation of the roadway was reportedly due to a surveying mistake by a member of Plaintiff's crew.[1]  Mr. Commerford, who has since retired from Johnson, states in a sworn declaration that he told Plaintiff that he had made the decision to demote Plaintiff "based on his job performance and deficiencies on the roadway project."  (Commerford Decl. ¶ 3).  According to Commerford, Plaintiff's "oversights and poor job performance were a substantial factor leading to the [construction] defects, as he was the responsible supervisor."  (Id. ¶ 2).  Plaintiff, however, contends that the problem with the

---

[1] The surveyor continued to perform surveying work for Johnson on the Cocoa Beach project but was not rehired for future projects.  (Commerford Decl. ¶ 5).

road was not his fault and was, in any event, a minor issue that did not cause extensive delay on the project or financial loss to Johnson. Plaintiff claims that he was demoted not because of the roadway issue but in retaliation for his exercise of FMLA leave.

Additionally, Plaintiff claims that Johnson demoted him in retaliation for his complaints about one of the workers on his crew being an illegal alien. Plaintiff testified in his deposition that one day, one of the workers he supervised, Mr. Rosales, was holding his green card and said "no good." (Hamm Dep. at 17-18). Plaintiff did not ask Mr. Rosales what he meant by "no good," but he concluded from that Mr. Rosales's comment that the green card was fraudulent. (Id. at 24, 78, & 82). Plaintiff did not know whether Mr. Rosales's green card was truly "no good." (Id. at 82). Mr. Rosales confirmed in his deposition that he told Plaintiff that his green card was "no good." (Rosales Dep. at 41).

Plaintiff testified in his deposition that he told both Mr. Juric and Mr. Seecharin about the issue with Rosales's green card. He told Mr. Juric that he thought Rosales was an illegal alien, and when Mr. Juric merely shrugged his shoulders in response, Plaintiff then told Mr. Seecharin that Rosales had showed him "his illegal green card." (Hamm Dep. at 32, 40-41). Plaintiff does not know whether there was any follow-up by anyone at Johnson regarding Rosales's green card, but Rosales continued to remain employed at Johnson after Plaintiff made his reports. (Id. at 52). Hamm believed – based on what Rosales told him, his own "gut feeling," and the fact that "the whole crew was Mexican help" – that Johnson was hiring illegal immigrants. (Id. at 94, 96).

When Rosales was deposed in August 2007, he testified that he had obtained his green cards from nongovernment sources; for example, he had acquired one of them at a

-3-

flea market. (Rosales Dep. at 47-48). Johnson immediately terminated Rosales after this deposition testimony came to light.

## II.  Discussion

### A.  Summary Judgment Standards

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex 477 U.S. at 322. When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.' Essentially, the inquiry is 'whether the

evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1261 (D. Kan. 2003) (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)); see also LaRoche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment."). "[T]he summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." Chapman v. AI Transp., Inc., 229 F.3d 1012, 1026 (11th Cir. 2000).

### B. The Merits of Johnson's Motion

### 1. FMLA Claims

Under the FMLA, an eligible employee is entitled to 12 workweeks of unpaid leave annually "[i]n order to care for the . . . parent[] of the employee, if such . . . parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). "Upon the employee's timely return [from FMLA leave], the employer must reinstate the employee to his or her former position or an equivalent." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86 (2002). "The Act creates a private right of action to seek equitable relief and money damages against employers who 'interfere with, restrain, or deny the exercise of or the attempt to exercise' FMLA rights." Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006).

The Eleventh Circuit has "recognized that [29 U.S.C.] § 2615(a) creates two types of

claims: 'interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act.'" Id. (quoting Strickland v. Water Works & Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001)). "To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." Strickland, 239 F.3d at 1206-07. "In contrast, to succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." Id. "In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions 'were motivated by an impermissible retaliatory or discriminatory animus.'" Id. (quoting King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir. 1999)).

Plaintiff brings both of these types of claims in this case, and they are addressed in reverse order.

### a. FMLA Retaliation Claim (Count II)

In Count II, Plaintiff contends that Johnson demoted him in retaliation for his taking of FMLA leave. This claim survives summary judgment.

"When a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, [courts] apply the same burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for evaluating Title VII discrimination claims." Strickland, 239 F.3d at 1207. Plaintiff

has not presented any direct evidence of retaliatory intent, and thus the Court evaluates his FMLA retaliation claim under the McDonnell Douglas scheme.  Under this framework, Plaintiff has the initial burden to establish a prima facie case of discrimination by a preponderance of the evidence.  "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

If the plaintiff establishes a prima facie case, a presumption of discrimination arises. See, e.g., Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).  Once the plaintiff has presented a prima facie case and its attendant presumption, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. McDonnell Douglas, 411 U.S. at 802.  "If the [employer] does so, the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual."  Hurlbert, 439 F.3d at 1297.

To make a prima facie showing of retaliation, a plaintiff must establish:  (1) that he engaged in activity protected by the FMLA; (2) that he was subjected to a materially adverse action by his employer; and (3) a causal connection between the activity and the adverse action.  See Strickland, 239 F.3d at 1207; see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006) (refining retaliation standard to include "materially adverse actions" and not only "adverse employment actions").  Johnson concedes that Plaintiff has satisfied a prima facie case here.  (See Def.'s Motion for Final Summ. J., Doc. 95, at 20).

In response to Plaintiff's prima facie case, Johnson contends that it demoted Plaintiff for a reason unrelated to his taking of FMLA leave – the problem with the elevation of the

roadway. Thus, Johnson is entitled to summary judgment on the retaliation claim unless Plaintiff presents evidence creating a genuine issue of material fact regarding whether Johnson's stated reason was a mere pretext for discrimination. See, e.g., Chapman v. AI Transp., Inc., 229 F.3d 1012, 1024-25 (11th Cir. 2000) ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim."); accord Evans v. McClain of Ga., Inc., 131 F.3d 957, 964-65 (11th Cir. 1997) ("Under the established rule of law in this Circuit, a plaintiff can survive a motion for summary judgment or for judgment as a matter of law by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons.").

"To show pretext, a plaintiff must come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Hurlbert, 439 F.3d at 1298 (internal quotations and citations omitted). In determining whether an issue has been raised as to pretext, this Court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation and internal quotation omitted). This determination involves an "evaluat[ion of] whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies,

or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Id. (quoting Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996)).

Applying these standards, Plaintiff has presented evidence sufficient to create a genuine issue of material fact regarding whether Johnson's reasons for its actions were a pretext for retaliation.[2] In this case, as in Hurlbert, "[t]he close temporal proximity between [Plaintiff's] request for leave and [the adverse action] . . . is evidence of pretext," and this "evidence of temporal proximity . . . does not stand alone." 439 F.3d at 1298.

There are disputes in the record regarding the severity of the roadway problem and Plaintiff's accountability for it. Plaintiff claims that he discovered the elevation problem while the roadway was still unfinished and reported it to Mr. Juric; Mr. Juric talked about merely filling it in with some more rock and did not consider it a big deal. (Hamm Dep. at 120 & 126). Mr. Juric, however, denies that Plaintiff reported it and gave varying answers when asked how he learned of the problem. (Juric Dep. at 73-75). Moreover, Plaintiff had worked for Johnson for several years prior to his demotion, and Johnson has not alleged prior

---

[2] Johnson contends that Plaintiff cannot show pretext based on "comparators" because Johnson has never demoted anyone else for taking FMLA leave and – addressing pretext with regard to the whistleblower claim in Count III – because no other Johnson employee has ever been a whistleblower. (See Doc. 95 at 6 & 22). However, Johnson's "comparator" analysis is flawed. An appropriate comparator is someone who is similarly situated employment-wise but who *did not* engage in protected activity – someone outside the plaintiff's protected class, not someone within it. The fact that Plaintiff might be the first Johnson employee who claims to have engaged in protected whistleblowing activity or taken FMLA leave is irrelevant to the analysis. As stated in the text, Plaintiff has presented evidence raising a genuine issue as to pretext.

misconduct or poor performance by Plaintiff. Plaintiff had received a raise only three months prior to the demotion, and Plaintiff has presented evidence that demotions were rare at Johnson. Although this Court does not sit in judgment of an employer's business decisions, in this case there are enough disparities in the record testimony to cast doubt on the proffered reason for Johnson's decision to demote Plaintiff, and thus Plaintiff has presented sufficient questions on the issue of pretext to survive summary judgment on his FMLA retaliation claim.

### b. FMLA Interference Claim (Count I)

In Count I, Plaintiff claims that he was denied his substantive FMLA right to be reinstated to his superintendent position rather than to return as an equipment operator at Johnson. This claim also survives summary judgment.

"To establish an interference claim, 'an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied.'" Hurlbert, 439 F.3d at 1293 (quoting Strickland, 239 F.3d at 1207). "[A]n employee returning from covered leave is entitled to be restored to his former position or its equivalent. An employer can deny the right to reinstatement, however, if it can demonstrate that it would have discharged the employee had he not been on FMLA leave." Strickland, 239 F.3d at 1208 (citations omitted). "In other words, if an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable." Id.

"Unlike the right to commence leave, an employer can deny the right to reinstatement in certain circumstances because [a] United States Department of Labor regulation qualifies the right." O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1354 (11th Cir. 2000)

(citation omitted). The regulation cited by the O'Connor court provides: "An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment." 29 C.F.R. § 825.216(a).

As noted in the discussion of Count II, however, issues of fact remain regarding whether Johnson actually demoted Plaintiff due to the problem with the roadway elevation. Thus, the motion for summary judgment must be denied on Count I as well.

### 3. Count III

In Count III, Plaintiff brings a claim under section 448.102(3), Florida Statutes – part of the Florida Whistleblower Act ("FWA"), contending that he "objected to . . . [Johnson's] actions of illegally employing persons in the crew he supervised who were not lawfully authorized to work in the United States of America." (Compl. ¶ 62). This subsection provides: "An employer may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."

Florida courts and the Eleventh Circuit apply the Title VII burden-shifting framework and case law to claims under the FWA. See, e.g., Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950-51 (11th Cir. 2000); Rice-Lamar v. City of Fort Lauderdale, 853 So. 2d 1125, 1132-33 (Fla. 4th DCA 2003). To establish a prima facie case of retaliation under the FWA,

a plaintiff must prove that (1) he engaged in statutorily protected expression; (2) he suffered a materially adverse action; and (3) the adverse employment action was causally linked to the statutorily protected activity. White v. Purdue Pharma, Inc., 369 F. Supp. 2d 1335, 1336 (M.D. Fla. 2005); see also Burlington, 548 U.S. at 57.

It is undisputed that Plaintiff suffered an adverse employment action when he was demoted, and thus the second part of the prima facie case is satisfied. However, Johnson contends that Plaintiff cannot satisfy a prima facie case because he cannot establish the first or third elements. The Court agrees with regard to the third element – causation – and thus need not reach the issue of whether the first element has been met here.[3]

---

[3] The issue of whether the first element of the prima facie case has been satisfied is a complicated one. As both parties acknowledge, in White v. Purdue Pharma, Inc., 369 F. Supp. 2d 1335, 1337 (M.D. Fla. 2005), the court held that based on the plain language of the statute, when proceeding under subsection 448.102(3) a plaintiff "must prove that the activity, policy or practice objected to *is*, in fact in violation of a law, rule, or regulation." The parties here dispute whether Plaintiff can do so.

Plaintiff contends that he complained that Johnson was violating 8 U.S.C. § 1324a, which proscribes "[u]nlawful employment of aliens." Specifically, Plaintiff asserts that Johnson violated 8 U.S.C. § 1324a(a)(2), which makes it "unlawful for a person or other entity, after hiring an alien for employment in accordance with paragraph (1), **to continue to employ** the alien . . . knowing the alien is (or has become) an unauthorized alien with respect to such employment." (Emphasis added).

Plaintiff asserts that "as an employer is made aware of the immigration status problems, the knowledge requirement is satisfied, regardless of how this knowledge was obtained." (Doc. 114 at 20). Johnson, however, argues that at the time of Plaintiff's complaint to Johnson, no violation had been committed because Rosales had been properly hired and there is no evidence that Johnson was committing a knowing violation of law prior to Plaintiff's complaint. Stated differently, Johnson in essence contends that – assuming that Johnson did not act properly after Plaintiff made his complaint – Plaintiff would have to have complained again about Rosales so that it could constitute an objection regarding "continuing to employ" Rosales after knowledge could arguably be imputed to Johnson. As noted in the text, the failure of Plaintiff to satisfy the third prong of his prima facie case is dispositive of this count, and thus the Court need not resolve this dispute as to the first prong.

"The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000). "However, there is this exception: temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." Id. Such is the situation here.

In his sworn declaration, Mr. Commerford states that at the time he made the decision to demote Plaintiff, he had no knowledge that Plaintiff had ever reported or complained about a violation of law by Johnson. (Commerford Decl. ¶ 4). In its summary judgment motion, Johnson argues that the evidence is unrefuted that Mr. Commerford had no knowledge of Plaintiff's purported whistleblowing activity when he demoted him. (See Doc. 95 at 24). Plaintiff has not responded to this argument, nor has Plaintiff cited any evidence impeaching Commerford's statement in his declaration that he had no knowledge.[4] Thus, as in Brungart, in this case there is unrebutted evidence of lack of knowledge by the decisionmaker, and the causal-connection element of the prima facie case is therefore not satisfied. Plaintiff's FWA claim fails on this basis.

---

[4]Plaintiff acknowledges that Commerford is the one who demoted him. (See Doc. 114 at 7 ("Commerford demoted Hamm to equipment operator." (citing Hamm Dep.))).

III.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that Johnson's Motion for Final Summary Judgment (Doc. 95) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to Count III and is otherwise **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 17th day of July, 2008.

Copies furnished to:
Counsel of Record
Unrepresented Party

_____
JOHN ANTOON II
United States District Judge